IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dontay Markeith Wells,                                     )<br>                                                              )<br>                              Plaintiff,      )<br>                                                              )<br>v.                                                              )<br>                                                              )<br>Ass. Warden D. Fallen; Captain C. Collie; SIS  )<br>Captain K. Vining; Lieutenant B. Finnerty;     )<br>Mail Room Official C. Hamer; Mail Room     )<br>Official N. Dial; Mail Room Official S.            )<br>Hackenburg; Mail Room Official S. Taylor;   )<br>Unit Counselor J. Bryant; Unit Manager         )<br>Koger; HSA Dr. Rosario; AHSA Dr. Guevara; )<br>Dr. Saha, *MLP*; Dr. Lopez; Nurse Joan Tapper; )<br>Nurse Richard Valez; Nurse N. Clem; Nurse L. )<br>Ryan; Nurse V. Smith; Nurse Amy Boake;     )<br>Mrs. Turner, *Food Service Administrator*, *sued* )<br>*in official capacity*; Officer J. Kapral; Officer  )<br>J. Dumais; Officer J. Ford; Officer Salmon;   )<br>Officer Billings; Officer Coleman; Officer       )<br>Tucker; Officer Simpkins; Officer Y. Gordon; )<br>Officer Barton; Officer Burkett; Officer J.      )<br>Harriot; Officer S. Howard; Officer Toilbert;  )<br>Officer C. Rouse; Officer Peay; Officer J.       )<br>Green; Officer Munson;  Officer Martinez;      )<br>Officer Evans; Officer Strickland; Officer      )<br>Randolph; Lt. Hollet; Ass. Warden Acosta;    )<br>Clinical Director Dr. Blocker; Lieutenant       )<br>Bryant; Lieutenant Thompson;   Lieutenant    )<br>Johnson; Lieutenant Santiago; Lieutenant      )<br>Lewis; ACT Lieutenant-Officer Broadwater;  )<br>Lieutenant Oliver; Lieutenant Burgess, *sued in* )<br>*official capacity*; Raymond Kelso, *Disciplinary* )<br>*Hearing Officer*; S. Lathrop, *Mailroom - Unit*  )<br>*Manager*; Grievance Coordinator Mackleburg; )<br>Nurse Rogers; Officer Reese; and Lieutenant )<br>Clark, *all sued in their official and personal*   )<br>*capacities unless otherwise noted*,                )<br>                                                              )<br>                              Defendants.    )<br>_____)  | C/A No.  0:12-304-CMC-PJG<br><br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Page 1 of  16

Plaintiff Dontay Markeith Wells ("Wells"), a self-represented federal prisoner, filed this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971),[1] alleging violations of his constitutional rights. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 60.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Wells was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 64.) Wells filed a response in opposition.[2] (ECF No. 81; Additional Attachments, ECF No. 82.) Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

**BACKGROUND**

Wells's two-hundred page Complaint against sixty defendants consists almost entirely of diary-like daily entries. As a result, it is difficult if not impossible for the court to discern the specific claims that Wells is purporting to raise. Liberally construed, Wells appears to raise claims on a myriad of issues ranging from § 1983 allegations of unconstitutional conditions of confinement,

---

[1] Bivens establishes as a general proposition that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. Carlson v. Green, 446 U.S. 14, 18 (1980); see also Holly v. Scott, 434 F.3d 287, 289 (4th Cir. 2006). A Bivens claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in Bivens actions, and vice versa. See Harlow v. Fitzgerald, 457 U.S. 800, 814-20, n.30 (1982); see also Farmer v. Brennan, 511 U.S. 825 (1994).

[2] Accompanying his response in opposition, Wells filed a motion seeking to enlarge the page limit allowed for his response (ECF No. 80), which the court observes is approximately 440 handwritten pages without attachments. Although the court finds that the issues in this case did not warrant such an extreme deviation from the required page limitations in the Local Rules, since the court has reviewed Wells's filing in its entirety, his motion to enlarge is now moot.



excessive force, and deliberate indifference to his medical needs to First Amendment claims of access to the courts and mail tampering. Wells's Complaint also appears to assert violations of due process, conspiracy, and retaliation. For the reasons discussed below, the majority of Wells's claims were not properly exhausted.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth



specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants' Motion for Summary Judgment**

**1.     Immunities**

The defendants correctly assert that to the extent Wells is seeking monetary damages against the defendants in their official capacities, they are immune from suit. Bivens claims are not actionable against the United States, federal agencies, or officials acting in their official capacities, as they are protected by sovereign immunity. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (holding that an official capacity suit "generally present[s] only another way of pleading an action against an entity of which an officer is an agent" and "is, in all respects other than name, to be treated as a suit against the entity") (internal quotations omitted); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (observing that "a Bivens action does not lie against either agencies or officials in their official capacity"). Accordingly, the individual defendants in their official capacities are entitled to dismissal of any claims seeking monetary damages.

Additionally, the defendants correctly argue that to the extent Wells seeks declaratory and injunctive relief against the defendants in their individual capacities, he is not entitled to such relief. See, e.g., Kirby v. City of Elizabeth City, N.C., 388 F.3d 440, 452 n.10 (4th Cir. 2004) (stating that injunctive relief sought by the plaintiff could only be awarded against the officers in their official



capacities); Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd., 150 F. App'x 389, 401 (6th Cir. 2005) ("[A] plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, *i.e.*, his official capacity."). Accordingly, the defendants in their individual capacities are entitled to dismissal of any claims seeking declaratory or injunctive relief.

### 2. Exhaustion

A prisoner must exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. See Booth v. Churner, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).



The Federal Bureau of Prisons ("BOP") has a three-tiered administrative grievance process. See 28 C.F.R. §§ 542.10, et seq. An inmate may first seek to informally resolve his complaint by filing Form BP-8, and if the matter cannot be resolved informally, the inmate must file a formal written "Administrative Remedy Request" (Form BP-9) within twenty calendar days following the date on which the basis for the complaint occurred. 28 C.F.R. §§ 542.13, 542.14(a). If the inmate is dissatisfied with the response, he may appeal the decision to the Regional Director within twenty calendar days of the date of the Warden's response by filing Form BP-10. 28 C.F.R. § 542.15. Finally, the inmate may appeal this decision to the General Counsel within thirty calendar days of the Regional Director's response by filing Form BP-11. Id.

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). However, "a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." Id. at 725 (citing Woodford, 548 U.S. 81).

In this case, the defendants have provided the Administrative Remedy Generalized Retrieval Log that they argue "reflects that of the 296 grievances/appeals [Wells] has filed, Mr. Wells has only properly filed and exhausted one (1) grievance at every level of the administrative remedy process in relation to the claims contained in his Complaint." (Lathrop Aff. ¶ 6, ECF No. 62-26 at 3; see also Ex. B, ECF No. 62-26 at 30-177.) Additionally, they provide affidavit testimony from Roy Lathrop, a Paralegal Specialist for the United States Department of Justice, BOP, South Carolina Consolidated Legal Center at FCI-Edgefield, who provides a detailed synopsis of Wells's grievances which were not exhausted. (See generally Lathrop Aff., ECF No. 62-26.)

In response to the defendants' motion, Wells presents two main categories of arguments with regard to his alleged failure to exhaust his administrative remedies: (1) that the defendants conspired to prevent him from exhausting his administrative remedies, and (2) that grievances that the defendants argue were not *properly* exhausted were, in fact, exhausted for various reasons.

Many of Wells's arguments that the defendants conspired to prevent him from exhausting are related to repeated difficulties Wells appears to have had with submitting items that contained insufficient postage to the mail room. Specifically, he appears to argue that the mail room staff provided him with incorrect information as to how many stamps were needed on his envelopes and that the defendants refused to weigh his letters to determine how much postage he needed. He also appears to take issue with the turn-around time that he had to re-mail letters that had been returned for insufficient postage and alleges the defendants intentionally delayed his mail correspondence. In response to these arguments, the defendants have provided multiple affidavits from various mail room staff and correctional officers that handled Wells's mail. Several of the affidavits outline the inmate mailing procedures and policies as follows:

> Inmates are responsible for ensuring that the appropriate amount of postage is on each piece of outgoing correspondence. This includes the cost of correspondence in which the inmate utilizes procedures such as certified, registered, and insured mail. A mailroom staff member makes daily rounds in the Special Housing Unit (SHU) on Monday through Friday to collect special mail from inmates housed in that unit.
> All inmate mail is merely gathered at the institution. Mailroom staff deliver the outgoing inmate mail to the local United States Post Office (USPO) once a day Monday through Friday. The USPO makes the determination as to whether or not there is sufficient postage on the mail, this is not determined by any FCI Edgefield mailroom staff member.
> [Wells] constantly refused to send his correspondence with the correct postage. This occurred even after [Wells's] packages were weighed by staff and he was informed of the correct postage amount. [Wells] constantly argued with mailroom staff over the correct amount of postage because he did not understand that additional costs were associated with sending mail by certified receipt. [Wells] also did not understand that it was not FCI Edgefield mailroom staff that were returning his mail for insufficient postage, it was the USPO. Despite the numerous times



> mailroom staff attempted to explain to [Wells] the reasons why the USPO was returning his mail, [Wells] continued to send his correspondence with incorrect postage attached.
>
> When the USPO returns mail to the institution for insufficient postage, mailroom staff contact the inmates Counselor or other unit team staff. The unit staff retrieve the mail and present it to the inmate, gather the correct postage and have the inmate affix the postage to the mail. The staff then return the mail to the mailroom which is then returned to the USPO. If an inmate refuses to provide the additional postage needed, staff will open the mail prior to returning it to the inmate to ensure the contents of the envelope do not contain any contraband.
>
> Rounds to pick up legal mail are usually conducted after the mail has already been taken to the USPO for delivery. Any legal mail, certified or not, would then be taken to the USPO the next business day. . . . When certified mail reaches the USPO, the certified receipt is stamped by a postal employee to signify receipt by the USPO. The receipt is then brought back into the institution and placed in the mail bag for delivery to the inmate. If the certified mail does not have the correct postage, as determined by a USPO employee, it is returned the next day when the mail is picked up by FCI Edgefield mailroom staff.

(Hackenberg Aff. ¶¶ 3-7, ECF No. 60-24 at 2-3; see also Bryant Aff., ECF No. 60-6; Dial Aff., ECF No. 60-15; Hamer Aff., ECF No. 60-25; Lathrop Aff., ECF No. 60-33; Taylor Aff., ECF No. 62-18.) While the total amount of elapsed time in such scenarios may have taken a number of days, Wells has failed to provide any probative evidence to support his "belief that mail room staff were returning his remedies for insufficient postage in an effort to ensure he was outside the time frames to file." (Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-1 at 10.) Properly returning mail for insufficient postage is not the type of preventive action that renders an administrative remedy "unavailable." Cf. Moore, 517 F.3d at 725, 729 (recognizing the rule that an administrative remedy is not available if a prisoner, through no fault of his own, is prevented from availing himself of it but finding that prison officials did not prevent plaintiff from exhausting his administrative remedies when they properly rejected his grievance because it did not comply with the grievance policy).

Wells also appears to allege that many, if not all, of his grievances should be considered as having been exhausted or excused from exhaustion for the following reasons:



(1) that FCI Edgefield staff refused to provide documentation to show that Wells was arguably entitled to additional time in which to file his grievances (Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-1 at 3; Wells Decl. ¶ 4, ECF No. 24 at 2);

(2) that according to 28 C.F.R. 115.52B(1), when filing a grievance involving sexual abuse, the "agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse," and that accordingly, several of his grievances were improperly denied as untimely (Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-1 at 16-17);

(3) that according to 28 C.F.R. 542.14(D), an inmate may bypass the institution level when filing a grievance if the inmate's safety is at risk, and that therefore several of Wells's grievances were improperly denied when he bypassed the institution level (Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-3 at 2);

(4) that several of Wells's appeals requested that lower level complaints be attached in order to be considered as properly filed, and that these documents were not available to Wells because the agency had retained the copies that he needed (Wells Decl. ¶¶ 1-3, ECF No. 24 at 1);

(5) that many of his informal resolutions and grievances were "refused," unprocessed, or not logged in to the grievance database (Compl., ECF No. 1-45 at 4; Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-1 at 22-23);

(6) that per 28 C.F.R. 542.17, any rejection of an administrative remedy is a considered a denial, and that since he received denials from each of the levels of the grievance process, Wells argues that he exhausted his administrative remedies (Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-1 at 7); and

(7) that 28 C.F.R. 542.17(A) addresses when grievances can be rejected, and that grievances rejected as repetitive, untimely, and not having enough information with which to conduct an



investigation were not proper reasons for denial and should therefore be considered exhausted (Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-2 at 7-8).

Wells's first argument is conclusory and is belied by the record in this case which shows several instances where counselors wrote letters on Wells's behalf describing occasions where Wells's delay in the exhaustion process was outside of his control and asking that this information be taken into consideration when evaluating Wells's delay. (See, e.g., ECF No. 24-3 at 3, ECF No. 24-5 at 5, ECF No. 24-6 at 3, ECF No. 24-8 at 5, ECF No. 24-13 at 4, ECF No. 25-2 at 3.) The court observes that in many of these instances, it appears that Wells's institutional-level administrative remedy had previously been denied as untimely, and that these letters pertained to his regional and central office-level appeals. Accordingly, Wells's allegations that staff refused to provide documentation to excuse his delay are wholly unsupported.

Wells's argument relying on 28 C.F.R. 115.52(b)(1) also must fail. Although 28 C.F.R. 115.52(b)(1) states that "[t]he agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse," Wells has utterly failed to demonstrate that any grievance that he properly filed alleging sexual abuse was denied as untimely.

Similarly, Wells's reliance on 28 C.F.R. 542.14(d) fails. Wells argues that an inmate may bypass the institutional level when filing a grievance if the inmate's safety is at risk, and that therefore several of Wells's grievances were improperly denied when he bypassed the institution level. 28 C.F.R. 542.14(d) provides that

> [i]f the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. . . . If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an



> Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

The record contains undisputed evidence that demonstrates that this regulation was properly implemented. (See, e.g., ECF No. 24-11 at 3) (rejection notice in which administrative remedy coordinator made determination that the issue raised was not sensitive, informing Wells that his request/appeal was being retained according to policy, and directing Wells to file a request or appeal at the appropriate level via regular procedures). Again, Wells has failed to present any evidence to the contrary. Rather, Wells appears to rely on these rejection notices as evidence that he was prevented from exhausting because the central office "retained" his filing, thus preventing him from attaching that documentation to further exhaust his claim. Wells is mistaken, as the record shows that BOP followed the applicable regulation. Moreover, as Wells's filing was submitted at the improper level, he had nothing to properly appeal. Rather, BOP instructed Wells as to the proper avenue to exhaust his claim, and Wells failed to follow it.

Based on the allegations in his Complaint (see ECF No. 1-45 at 4) as well as arguments in his response in opposition to the defendants' motion (ECF No. 81-1 at 22-23), Wells appears to argue that numerous informal resolutions and grievances were "refused," unprocessed, or not logged in to the grievance database. The identifying numbers that Wells relies on, however, appear to reflect the number assigned at the informal resolution level. (See, e.g., Informal Resolution # Edg-1125, ECF No. 24-1 at 17.) Based on the record in this case, it is clear that a different identifying number is assigned when an administrative remedy is filed. (Cf. Request for Administrative Remedy # 630208-F1, ECF No. 24-1 at 16.) It is also clear from the record that the informal resolution cited above and the administrative remedy that followed were unequivocally accepted and processed in the system. (See Lathrop Aff. ¶ 8, ECF No. 62-25 at 3; ECF No. 62-26 at 30.) As evidenced by the



multitude of submissions by Wells, there is no indication—other than Wells's misplaced assertions—that Wells did not have access to grievance forms, could not submit forms, or could not appeal answers to his grievances. Accordingly, on this record Wells's argument that the defendants failed or refuse to process his grievance is wholly unsupported.

Wells also relies on 29 C.F.R. 542.17 to argue that all of his rejections should be considered denials for the purposes of exhaustion, and that many of the reasons given for those denials were improper. The defendants, however, have presented evidence that Wells did not properly exhaust his available remedies. Additionally, the record demonstrates that the defendants provided Wells with opportunities and instructions to correct errors with his grievances, but that Wells failed to do so. The law is clear that "satisfaction of the exhaustion requirement requires 'using all steps that the agency holds out, and doing so properly.'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)); see also Jones v. Bock, 549 U.S. 199, 218 (2007) ("Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'") "[A] prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) (citing Woodford, 548 U.S. 81). Accordingly, the defendants are entitled to summary judgment on these claims based on Wells's failure to properly exhaust his available administrative remedies.

### 3. Wells's Placement

Therefore, it appears that the only claim properly exhausted is Well's allegation that Defendant Lewis placed Wells in SMU and that he was "placed on rec alone," which the defendants have construed as alleging that Wells's placement on cell and recreation alone status constituted

cruel and unusual punishment. (Defs.' Mem. Supp. Mot. Summ J., ECF No. 60 at 8; Lathrop Aff. ¶ 6, ECF No. 62-26 at 3; see also Compl. ¶¶ 43. 46, 76, ECF No. 1-1 at 9, 10-11, 24-25.)

"The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)).

To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition or demonstrate a substantial risk of such serious harm resulting from his exposure to the challenged conditions. See De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003); Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Notwithstanding Wells's allegations regarding his conditions of

confinement, he has failed to demonstrate that he suffered a serious or significant physical or mental injury, or that there was a substantial risk of such serious harm, as a result of the alleged conditions. See De'Lonta, 330 F.3d at 634 (stating that only an "extreme deprivation," which is a "serious or significant physical or emotional injury resulting from the challenged conditions," or substantial risk thereof, will satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement).

To the extent that Wells is challenging his placement on cell and "recreation alone" status, he has no cognizable claim relating to his placement or custody level in BOP. McKune v. Lile, 536 U.S. 24, 26 (2002) (noting that the "decision where to house inmates is at the core of prison administrators' expertise"). Generally, courts do not become involved in review of discretionary decisions of prison administrators, such as being placed in administrative segregation, because such decisions do not involve due process. Meachum v. Fano, 427 U.S. 215, 224-25 (1976); see also Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992). "Segregation is one of the conditions of confinement typically contemplated when a person receives a prison sentence; therefore, it is neither cruel and unusual, nor is it a violation of due process." Keeler, 782 F. Supp. at 44. The defendants have provided affidavit testimony from Gerald Lewis, a Lieutenant at FCI-Edgefield, who avers that Wells was confined within the Special Housing Unit and separated during outside recreation due to Wells's involvement in several altercations with other inmates, and that these decisions were prudent and within Lewis's discretionary authority. (Lewis Aff. ¶ 5, ECF No. 60-34 at 3.) Wells response in opposition provides no evidence to refute Lewis's testimony. (See Pl.'s Resp. in Opp'n Mot. Summ. J., ECF No. 81-14 at 11 through ECF No. 81-15 at 6.) Accordingly, the defendants are entitled to summary judgment on these claims.

*PJG*

C.     **Other Claims**

To the extent that Wells's Complaint may be construed to allege any other constitutional violations, the court finds that Wells has failed to plead sufficient facts to state a plausible claim. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).

## RECOMMENDATION

For the above reasons, the court recommends that the defendants' motion for summary judgment (ECF No. 60) be granted. Additionally, the parties are instructed that any objections filed in response to this Report and Recommendation shall not exceed the page limitations specified in Local Civil Rule 7.05(B)(1) DSC.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 6, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).